**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom R Gower, | No. CV-22-01334-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Yuma Senior Living LLC, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment.  (Doc. 22.)  Plaintiff filed a Response (Doc. 27) and Defendant filed a Reply (Doc. 29).  Finding that oral argument is not necessary to resolve the pending motion and having considered the parties' briefing and relevant case law, the Court will grant the motion.

I.    **BACKGROUND**

This Motion for Summary Judgment stems from Plaintiff's claims against Yuma Senior Living ("YSL") alleging Americans with Disabilities Act and Arizona Civil Rights Act violations.  (Doc. 1-3 at 5.)  Plaintiff was employed by YSL as a maintenance technician from October 2015 until his resignation in January 2021.  (Doc. 23 at 5 ¶¶ 3, 6 35.)  Plaintiff resigned because of YSL's COVID-19 vaccination policy, which required employees to submit proof of vaccination or physician note stating it would be medically unsafe for them or proof of religious beliefs prohibiting the vaccination.  (Doc. 28 at 4 ¶ 20, 7 ¶ 35.)  YSL implemented this policy because they housed elderly, handicapped and otherwise high-risk individuals in poor health.  (*Id*. at ¶ 6.)  Plaintiff had concerns about

taking the vaccination because of "some negative reactions he had to vaccines while in the military" but maintained he was ready to take it to save his job. (*Id.* at 7 ¶¶ 37–39.) However, he ultimately decided not to get the vaccination because of the release language contained in the Walgreens enrollment document. (*Id.*) Because of this, Plaintiff chose to resign his position with YSL. (*Id.* at 7 ¶ 35.)

Prior to his resignation, Plaintiff was in communication with human resources at YSL. When Plaintiff expressed concerns with the vaccination and policy, they recommended he see his, or any other, doctor to receive documentation that would allow him to be exempt from the vaccine. (*Id.* at 6 ¶ 29.) After submitting his resignation, YSL continued to speak with Plaintiff, wanting him to stay employed, and he agreed to become vaccinated in accordance with the policy within 90 days. (*Id.* at 8 ¶ 41–42.) However, the deadline passed with Plaintiff failing to get vaccinated or alternatively failing to get a doctor's note for exemption. (*Id.* at 11 ¶ 56.) Over the 90-day period, YSL continued to remain in contact with Plaintiff, with a human resources representative sending him reminders about needing to get the vaccination and providing opportunities to submit a doctors note which would have otherwise exempted him. (*Id.* at 12 ¶ 56.) Despite knowing it was required, but never submitting supporting documentation to YSL, Plaintiff maintains that he has a disability that should have exempted him from the policy. (*Id.* at 12 ¶ 58.) He also did not provide information about any disability to the Department of Economic Security when applying for unemployment benefits. (*Id.*)

Believing that he was discriminated against by YSL's policy, Plaintiff brought disability claims under both federal and Arizona law. Defendant now moves for summary judgment on these claims. For the reasons outlined below, the Court will grant this motion.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *See Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial."

1   *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

2   **III.   DISCUSSION**

3      **A.   ADA/ACRA**

4      Title I of the Americans with Disabilities Act (the "ADA") provides that no

5   employer "shall discriminate against a qualified individual on the basis of disability in

6   regard to job application procedures, the hiring, advancement, or discharge of employees,

7   employee compensation, job training, and other terms, conditions, and privileges of

8   employment."  42 U.S.C. § 12112(a).  An employer engages in unlawful discrimination

9   under the ADA by "not making reasonable accommodations to known physical or mental

10   limitations of an otherwise qualified individual with a disability . . . ."  42 U.S.C. §

11   12112(b)(5)(A); *see Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018)

12   ("The ADA treats the failure to provide a reasonable accommodation as an act of

13   discrimination if the employee is a qualified individual[.]").  An employer has affirmative

14   duties to engage in an interactive process with a disabled individual to identify reasonable

15   accommodations.  *See Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 799 (9th Cir.

16   2017).  Failure to do so constitutes unlawful discrimination under the ADA if a reasonable

17   accommodation was possible.  *See Snapp*, 889 F.3d at 1095.

18      To establish an ADA discrimination claim, a plaintiff must show that (1) he is

19   disabled under the Act; (2) he is a qualified individual in that she can perform the essential

20   functions of her job; and (3) the defendant failed to provide a requested reasonable

21   accommodation, failed to engage in an interactive process to identify a possible reasonable

22   accommodation, or terminated him because of the disability.  *See id.*; *Kennedy v. Applause,*

23   *Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Sanders v. Arnesan Prods., Inc.,* 91 F.3d 1351,

24   1353 (9th Cir. 1996); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999);

25   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007).

26      If Plaintiff establishes a prima facie case of discrimination, then there is a

27   presumption of unlawful discrimination.  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*,

28   374 F.3d 840, 849 (9th Cir. 2004).  That presumption can be rebutted by evidence of a

"legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If a Defendant provides such a reason, then the burden shifts back to the Plaintiff to show the reason given is a pretext. *Id.* "[A] plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002) (cleaned up).

YSL provides two reasons that justify a grant of summary judgment on Plaintiff's ADA claims: (1) YSL engaged in an interactive process with Plaintiff, and (2) Plaintiff cannot show that the reason for accepting his resignation was a pretext. The Court finds YSL's arguments persuasive.

First, YSL argues the ADA claims fail because they engaged in an interactive process and it was Plaintiff who refused to participate. (Doc. 23 at 9 ¶ 56.) It is undisputed that Plaintiff spoke with Ms. Hall from YSL on many occasions about his concerns with the vaccine. Ms. Hall advised Plaintiff that a note from a physician would suffice to get an exemption. Plaintiff went to see a doctor at the VA but did not get a note. Plaintiff did not talk to any other physician about getting a note. Plaintiff also did not provide YSL with any requested medical documentation. An employer's duty to continue engaging in the interactive process ends if the employee fails to cooperate by providing necessary medical validation. *Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019). Despite his refusal to provide documentation, YSL continued discussions with Plaintiff even after he tendered his first resignation letter on January 19, 2021. Plaintiff again made no attempt to get a doctor's note excusing him from the vaccine. On February 16, 2021, YSL provided all employees with an opportunity to get vaccinated through Walgreens. Plaintiff would have accepted the vaccine, but he refused to sign the release form provided by Walgreens. In turn, Walgreens would not vaccinate him without a signed release form.

Plaintiff alternatively argues that YSL's policy did not provide for any other exception or accommodation, and that YSL would only accept a note from a physician who

would declare the COVID vaccine "medically unsafe" to grant an exemption to their vaccination policy. Such a requirement was impossible at the time, according to Plaintiff. (Doc. 27 at 3.) However, Plaintiff provides no evidence or testimony that he actually tried to get a note, but was unable. Therefore, this argument fails. While unclear, Plaintiff seems to suggest that YSL should have made other accommodations because Plaintiff had been tested for COVID multiple times and YSL had implemented safety precautions before the vaccine was available—including masking, social distancing, providing hand washing stations, and lockdowns. (Doc. 23 at ¶ 2.) However, there is no evidence that Plaintiff requested another accommodation other than refusing the vaccine. Further, there is no evidence that Plaintiff sought permission to submit to regular COVID testing, or any other alternative, instead of getting the vaccine. All this considered, the Court finds that YSL adequately engaged in the interactive process.[1]

Even if Plaintiff were able to make a prima facie case of discrimination, he makes no argument that YSL's reason for accepting his resignation was not legitimate or was pretextual. YSL argues that it had a legitimate, non-discriminatory reason for its COVID vaccination policy. YSL housed approximately 105 senior residents, many of whom were handicapped, disabled, had ongoing medical problems or were generally in poor health. (Doc. 23 at 2 ¶ 6.) YSL notes that elderly and infirm people were at high risk of death from COVID, and the vaccination policy was based on recommendations from the Centers for Disease Control and Prevention and the Arizona Department of Health Services. (Doc. 23 at 7 ¶ 40.) Plaintiff does not reply to these reasons, but notes he was aware that COVID spread quickly and that people died from it. Noting these justifications, and Plaintiff's lack of response, the Court finds that YSL had a legitimate, nondiscriminatory reason for the vaccination policy, and Plaintiff has failed to show it was pretextual. Although the Court is sympathetic to Plaintiff's position, he has not shown that he attempted to get an exemption via a doctor's note, or that he requested some other accommodation. Therefore,

---

[1] YSL mentions, but doesn't argue, that Plaintiff has not provided any proof of the existence of a disability. (Doc. 22 at 13.) After reviewing the pleadings and exhibits, the Court agrees, but will not grant summary judgment on an issue that is not properly argued.

Defendant's Motion will be granted as to this issue.

**B. AEPA**

The AEPA provides, in relevant part, that an employee has an actionable claim for wrongful termination where:

(c) The employer has terminated the employment relationship of an employee in retaliation for any of the following:

(i) The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.

(ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

Ariz. Rev. Stat. § 23-1501(A)(3)(c).  To prevail, Plaintiff bears the burden of establishing either that YSL terminated his employment because he refused to violate Arizona law, or because he reasonably believed YSL violated Arizona law and reported it.  *See Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *4 (D. Ariz. Nov. 18, 2015).  To meet this burden, a plaintiff must show (1) that he had a reasonable belief that the employer violated, or will violate the law; (2) that he disclosed this belief to the employer in a reasonable manner; (3) that this belief was disclosed to someone in a supervisory position who has power to prevent or act on these violations and; (4) that he was terminated because he disclosed this belief.  § 23-1501(A)(3)(c)(i)–(ii.).  YSL argues that Plaintiff cannot make this showing because (1) Plaintiff did not have a reasonable belief that YSL was acting illegally and (2) that he was never terminated because his voicing concerns about the vaccine release.  (Doc. 22 at 14–15.)  The Court agrees.

Here, Plaintiff asserts that he had a reasonable belief that YSL violated Article 18,

Section 3 of the Arizona Constitution by requiring him to sign the Walgreens vaccine release form. (Doc. 27 at 6.) This provision, in relevant part, outlines that:

> It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability or responsibility on account of personal injuries which may be received by such servants or employees while in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void.

Ariz. Const. art. 18, § 3.

Plaintiff argues that because the Walgreens release appears to make him "solely responsible for all medical costs" related to vaccine injuries, YSL was attempting to contractually indemnify itself for the potential work-related injury, thus violating the above constitutional provision. (*Id.*) To support his belief that it was YSL, not just the vaccine administrator, attempting to indemnify itself, Plaintiff notes that the release form was given to him by YSL and included YSL's name on the form. (*Id.*) Defendant argues that Plaintiff did not have a reasonable belief that YSL was acting unlawfully because Plaintiff has since agreed that the release only applied to the administrator, and that Plaintiff was never concerned with any illegality of the required release but instead was concerned about paying his own medical costs in the event of a vaccine injury. (Doc. 23 at 8.) The Court agrees with the Defendant. The record does not support that Plaintiff did not want to sign the release form because he reasonably believed the release was unconstitutional, but rather that he did not want to sign the release because he was concerned with being burdened with paying potential medical costs. (Doc. 23-3 at 31.) Therefore, Plaintiff's AEPA claim fails here. However, even if Plaintiff did have a reasonable belief that YSL was acting illegally, his claim fails because he fails to link the reported conduct to his termination.

It is uncontested that Plaintiff notified YSL human resources about this

release and his unwillingness to sign it. (Doc. 23 at 9 ¶ 53.)  However, there is no evidence — and in fact there is evidence to the contrary— that YSL terminated Plaintiff for his disclosure or actual refusal to sign the release.  Plaintiff's AEPA claim is predicated on his assertion that he was terminated because YSL did not want to find another way for him to "accept the vaccine without the unlawful requirement of assumption of all responsibility." (Doc. 27 at 9.)  As the Court has discussed above, this is simply not the case.  YSL gave Plaintiff the opportunity to get an exemption from the vaccine requirement, which in turn would have removed any need for him to sign the release.  YSL continued working with Plaintiff to keep him employed until they eventually accepted his resignation when he would not get a doctors note for an exemption or sign the release so he could get the vaccine. (Doc. 23 at 9 ¶¶ 53–56.)  Given these two facts, Plaintiff cannot show a causal link, as required by the AEPA, between disclosing his issues with the release and YSL accepting his resignation.  *See e.g., Revit v. First Advantage Tax Consulting Servs., LLC,* Mo. CV10-1653-PHX-DGC, 2012 WL 1230841 (D. Ariz. Apr. 12, 2012). Therefore, the Court grants Defendant's Motion as to Plaintiff's AEPA claim.

## IV.   CONCLUSION

For the reasons discussed above,

**IT IS ORDERED granting** Defendant's Motion for Summary Judgment (Doc. 22.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and terminate this case.

Dated this 6th day of December, 2023.

Honorable Susan M. Brnovich
United States District Judge